**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. 08-CV-683-TCK-FHM |
| $343,069 IN UNITED STATES ) | |
| CURRENCY, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Before the Court is the United States' Motion to Strike Claim for Lack of Standing ("Motion to Strike") (Doc. 17).

### I.     Background[1]

On February 24, 2008, Oklahoma Highway Patrol Trooper Jim Siler ("Trooper Siler") conducted a traffic stop of a truck after observing that the truck failed to signal as it exited into a toll booth area on Interstate 44. Roberto Antonio Espinoza ("Espinoza") was driving the truck, and Claimant Miguel Bucio ("Bucio") was riding in the passenger seat. After the traffic stop had been concluded, Trooper Siler and Espinoza began a consensual encounter wherein Espinoza consented to a search of the vehicle. During the search of the truck cab, Trooper Siler found a plastic bag containing black plastic-wrapped bundles of United States Currency located under the bottom bunk. Other troopers arrived to assist in the search, and additional currency was found under the bottom bunk of the truck cab in the heater and heater ducts. The troopers also found plastic-wrapped currency on top of the bunk in a paper sack, pillow, and a black duffle bag. Further, under the bottom bunk against the wall, Trooper Siler located a false compartment, measuring eleven (11) feet

---

[1] Unless otherwise noted, the following facts are agreed upon by the parties.

wide and eighteen (18) inches tall. The compartment was covered with new sheet metal and a plastic cover. In the end, forty-four bundles of United States Currency were found and seized during the search of the truck totaling $343,069.00 ("seized currency").

Both Bucio and Espinoza explained to the troopers that they found the seized currency in a red duffle bag at a truck stop outside Miami, Florida approximately two days earlier. Thereafter, Bucio and Espinoza executed a Voluntary Disclaimer of Interest and Ownership ("Disclaimer"), whereby they abandoned and disclaimed any interest in the money they said they "found." Bucio now claims that "due to his limited command of the English language, and the inability of the [troopers] to speak Spanish, Bucio's execution of the Disclaimer was not voluntary or knowing." (Opp'n to Mot. to Strike 1.)

After finding the currency, Bucio and Espinoza did not notify Florida law enforcement officials of their discovery. Nor did they make a claim to the money with any Florida law enforcement official until Bucio made such a claim on October 12, 2009. (*See* Bucio Claim to Florida Dep't of Law Enforcement, Ex. A to Opp'n to Mot. to Strike.) Subsequent to the filing of the Government's Motion to Strike, the Florida Department of Law Enforcement ("FDLE") denied Bucio's claim to the seized currency. Specifically, the Office of General Counsel for the FDLE stated that it "decline[d] to process [Bucio's] claim to [the seized currency] made under Section 705.102 [because it] determine[d] that the claim was not timely made, that the currency was not turned over to a Florida law enforcement officer in a timely manner and that [Bucio] did not timely follow the provisions of Florida law regarding the currency." (FDLE Letter, Ex. 1 to Notice of Denial by Fla. Dep't of Law Enforcement.)

After seizing the currency, United States filed a Verified Civil Complaint for Forfeiture *In Rem* (Doc. 2). The United States alleged that the seized currency was subject to forfeiture under 21 U.S.C. § 881(a)(6) because it "constitute[d] (a) money furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act and/or (b) proceeds traceable to such an exchange and/or (c) money used or intended to be used to facilitate a violation of the Controlled Substances Act." (Compl. ¶ 6.) Following the filing of the Complaint, Bucio filed a claim "as an owner of the seized currency," seeking the dismissal of the United States' Complaint and the return of the seized currency to him. (*See* Docs. 8 & 15.)[2] The United States now seeks to strike Bucio's claim for lack of standing, arguing that Bucio does not have Article III standing to challenge the forfeiture of the seized currency.

## II.    Discussion

Article III standing is a threshold question in every federal court case, and "[i]n a forfeiture case, a claimant's Article III standing turns on whether the claimant has a sufficient ownership interest in the property to create a case or controversy." *United States v. One Lincoln Navigator*, 328 F.3d 1011, 1013 (8th Cir. 2003). As the party seeking to intervene in an in rem forfeiture action, Bucio "bears the burden of establishing his own constitutional standing at all stages in the litigation." *United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008) (internal citations omitted). "A party must prove by a preponderance of the evidence that he has a facially colorable interest in the res such that he would be injured if the property were forfeited to the United States; otherwise, no case or controversy exists capable of federal court adjudication."

---

[2] Espinoza has not filed a claim in this case. Bucio is therefore the sole claimant to the seized currency.

*Id.* "Unexplained, 'naked possession' of cash does not rise to the level of a possessory interest required to establish Article III standing to attack a forfeiture proceeding." *United States v. $543,190.00 in United States Currency*, 535 F. Supp. 2d 1238, 1249 (M.D. Ala. 2008) (internal citations omitted). "Although[] a claimant must make an initial evidentiary showing of such an interest, a claimant need not definitely prove the existence of that interest." *Id.*

When, as in this case, the claimant claims an ownership interest in the seized property,[3] the Tenth Circuit has held that the claimant has standing to challenge the forfeiture "when a claimant has . . . provided some evidence tending to support the existence of that ownership interest[.]" *Id.* at 1276; *see also United States v. United States Currency, $81,000.00*, 189 F.3d 28, 35 (1st Cir. 1999) ("[A]n allegation of ownership and some evidence of ownership are together sufficient to establish standing to contest a civil forfeiture."). To determine ownership interest, the Court must look to "the law of the state in which the interest arose." *United States v. Real Property Located at 5208 Los Franciscos Way, Los Angeles, Cal.*, 385 F.3d 1187, 1191 (9th Cir. 2004); *see United States v. Andrews*, 530 F.3d 1232, 1238 (10th Cir. 2008) ("We recognize that in federal forfeiture proceedings, ownership interests . . . are defined by state law.").

With regard to finding lost property, Florida law provides:[4]

---

[3] Bucio's claim demands "return and restitution" of the seized currency "as an *owner* of the seized currency." (Claim 1 (emphasis added).) Similarly, his Answer states that his "*ownership* interest . . . is not forfeitable in the property." (Ans. 3 (emphasis added).) Because these filings assert an ownership interest, as opposed to a possessory interest, in the seized currency, the Court looks to the standard governing claims of ownership. *See $148,840.00 in U.S. Currency*, 521 F.3d at 1274 (noting that whether claimant claims an ownership interest or possessory interest "dictates the type of evidence required to establish standing") (explaining nature of proof needed for each type of claimed interest).

[4] The parties agree that because the seized currency was found by Bucio and Espinoza in Florida, the Court should look to Florida law regarding Bucio's ownership interest.

> (1) Whenever any person finds any lost or abandoned property, such person shall report the description and location of the property to a law enforcement officer.
>
> (2) The law enforcement officer taking the report shall ascertain whether the person reporting the property wishes to make a claim to it if the rightful owner cannot be identified or located. If the person does wish to make such claim, he or she shall deposit with the law enforcement agency a reasonable sum sufficient to cover the agency's cost for transportation, storage, and publication of notice. This sum shall be reimbursed to the finder by the rightful owner should he or she identify and reclaim the property.
>
> (3) It is unlawful for any person who finds any lost or abandoned property to appropriate the same to his or her own use or to refuse to deliver the same when required.
>
> (4) Any person who unlawfully appropriates such lost or abandoned property to his or her own use or refuses to deliver such property when required commits theft as defined in s. 812.014, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat. Ann. §705.102 ("Section 705.102").

The United States argues that Bucio cannot demonstrate Article III standing because Bucio has not put forth any evidence showing ownership of the seized currency, and, in fact, "obtained the currency in a manner which rises to criminal conduct under Florida law." (Gov't Reply to Opp'n of Bucio to Mot. to Strike 2.) The Court agrees that Bucio lacks standing under Article III, as Bucio's assertion of ownership is without any supporting evidence. *See United States v. $38,570 in U.S. Currency*, 950 F.2d 1108, 1112 (5th Cir. 1992) ("[A] bare assertion of ownership in the res, without more, is inadequate to prove an ownership interest sufficient to establish standing.") (cited with approval by *$148,840.00 in U.S. Currency*, 521 F.3d at 1275); *Kadonsky v. United States*, 216 F.3d 499, 508 (5th Cir. 2000) (stating that "an unsupported assertion is insufficient to establish standing" when the evidence only shows that the claimant "might have been involved" with the res) (also cited with approval by *$148,840.00 in U.S. Currency*, 521 F.3d at 1275). Specifically, the FDLE has explicitly denied Bucio's claim to the seized currency, noting that Bucio failed to comply

with the requirements of Section 705.102. Similar to the claimant in *$543,190.00 in United States Currency*, because Bucio found the seized currency and did not comply with relevant Florida law, "Florida law deems him to have no lawful interest in the defendant property[.]" 535 F. Supp. 2d at 1251 (applying Florida law – namely, Section 705.102 – in assessing claimant's ownership interest) (holding that claimant did not have Article III standing based on assertion that he found subject currency in Florida when claimant failed to comply with Section 705.102); *United States v. $165,580 in U.S. Currency*, 502 F. Supp. 2d 114, 120 (D. Me. 2007) (finding claimants, who found currency in duffle bag near railroad track, did not have Article III standing when they failed to comply with notice provisions of Maine statute regarding lost property).

### III.   Conclusion

For the reasons outlined here, the Court GRANTS the United States' Motion to Strike Claim for Lack of Standing (Doc. 17) and accordingly strikes Bucio's Claim.

**SO ORDERED this 31st day of March, 2011.**

_____
**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**