IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No. 08-CV-683-TCK-FHM |
| $343,069 IN UNITED STATES | ) |
| CURRENCY, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

Before the Court is Claimant Miguel Bucio's ("Bucio") Motion for Reconsideration of

Opinion and Order Granting Government's Motion to Strike Claim for Lack of Standing (Doc. 35)

("Motion for Reconsideration").

I.      Background[1]

On February 24, 2008, Oklahoma Highway Patrol Trooper Jim Siler ("Trooper Siler")

conducted a traffic stop of a truck after observing that the truck failed to signal as it exited into a toll

booth area on Interstate 44. Roberto Antonio Espinoza ("Espinoza") was driving the truck, and

Bucio was riding in the passenger seat. After the traffic stop had been concluded, Trooper Siler and

Espinoza began a consensual encounter wherein Espinoza agreed to a search of the vehicle. During

the search of the truck cab, Trooper Siler found a plastic bag containing black plastic-wrapped

bundles of United States Currency located under the bottom bunk. Other troopers arrived to assist

in the search, and additional currency was found under the bottom bunk of the truck cab in the heater

and heater ducts. The troopers also found plastic-wrapped currency on top of the bunk in a paper

sack, pillow, and a black duffle bag. Further, under the bottom bunk against the wall, Trooper Siler

---

[1] These facts are taken from the Court's March 31, 2011 Opinion and Order ("March 31, 2011 Order").

located a false compartment, measuring eleven (11) feet wide and eighteen (18) inches tall. The compartment was covered with new sheet metal and a plastic cover. In the end, forty-four bundles of United States Currency were found and seized during the search of the truck totaling $343,069.00 ("seized currency").

Both Bucio and Espinoza explained to the troopers that they found the seized currency in a red duffle bag at a truck stop outside Miami, Florida approximately two days earlier. Thereafter, Bucio and Espinoza executed a Voluntary Disclaimer of Interest and Ownership ("Disclaimer"), whereby they abandoned and disclaimed any interest in the money they said they "found." Bucio later claimed, however, that "due to his limited command of the English language, and the inability of the [troopers] to speak Spanish, [his] execution of the Disclaimer was not voluntary or knowing." (Opp'n to Mot. to Strike 1.)

After finding the currency, Bucio and Espinoza did not notify Florida law enforcement officials of their discovery. Nor did they make a claim to the money with any Florida law enforcement official until Bucio made such a claim on October 12, 2009. (*See* Bucio Claim to Florida Dep't of Law Enforcement, Ex. A to Opp'n to Mot. to Strike.) Subsequent to the filing of the Government's Motion to Strike, the Florida Department of Law Enforcement ("FDLE") denied Bucio's claim to the seized currency. Specifically, the Office of General Counsel for the FDLE stated that it "decline[d] to process [Bucio's] claim to [the seized currency] made under Section 705.102 [because it] determine[d] that the claim was not timely made, that the currency was not turned over to a Florida law enforcement officer in a timely manner and that [Bucio] did not timely follow the provisions of Florida law regarding the currency." (FDLE Letter, Ex. 1 to Notice of Denial by Fla. Dep't of Law Enforcement.)

2

After seizing the currency, United States filed a Verified Civil Complaint for Forfeiture *In Rem* (Doc. 2). The United States alleged that the seized currency was subject to forfeiture under 21 U.S.C. § 881(a)(6) because it "constitute[d] (a) money furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act and/or (b) proceeds traceable to such an exchange and/or (c) money used or intended to be used to facilitate a violation of the Controlled Substances Act." (Compl. ¶ 6.)

Following the filing of the Complaint, Bucio filed a claim "as an owner of the seized currency," seeking the dismissal of the United States' Complaint and the return of the seized currency to him. (*See* Docs. 8 & 15.) The United States sought to strike Bucio's claim, arguing that Bucio did not have Article III standing to challenge the forfeiture of the seized currency. In its March 31, 2011 Order, the Court granted the United States' Motion to Strike, finding that Bucio did not have Article III standing. Bucio now seeks reconsideration of the March 31, 2011 Order.

## II.    Discussion

The Federal Rules of Civil Procedure do not recognize motions to reconsider. *See Hatfield v. Bd. of Cnty Comm'rs for Converse Cnty.*, 52 F.3d 858, 861 (10th Cir. 1995). The Court treats Bucio's Motion to Reconsider as arising under Federal Rule of Civil Procedure 54(b) because judgment has yet to be entered. *See Raytheon Constructors, Inc. v. Asarco, Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003). "The Court may, however, apply the legal standards applicable to a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e)." *Tomlinson v. Combined Underwriters Life Ins. Co.*, 684 F. Supp. 2d 1296, 1299 (N.D. Okla. 2010) (citing *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand LLP*, 322 F.3d 147, 167 (2d Cir. 2003)). A motion to reconsider, like a motion to alter or amend judgment, should be granted only

upon the following grounds: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *see Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1186 n.5 (10th Cir. 2000). Such a motion is not appropriate, however, "to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of the Paraclete*, 204 F.3d at 1012; *see June v. Union Carbide Corp.*, 577 F.3d 1234, 1247 (10th Cir. 2009); *Degraw v. Exide Tech.*, 744 F. Supp. 2d 1199, 1216 (D. Kan. 2010).

Bucio's Motion for Reconsideration does not identify an intervening change in law or present new evidence previously unavailable. Bucio instead argues – for the first time – that the Court should not have based any part of its decision on the denial of Bucio's claim by the FDLE because the FDLE had "no authority to adjudicate the lawfulness of [Bucio's] claim." (Mot. for Reconsideration 2.) The Court rejects Bucio's position for several reasons. First, as noted above, a motion to reconsider is not the place to "advance arguments that could have been raised in prior briefing." *Servants of the Paraclete*, 204 F.3d at 1012. Second, the Court finds *Hammoud v. Woodward*, No. 05-74222, 2006 WL 381642 (E.D. Mich. Feb. 17, 2006), the authority cited by Bucio, distinguishable from the instant case. In *Hammoud*, the court held that the United States Bureau of Customs and Border Protection erred when it concluded that it did not have to refer a timely administrative forfeiture claim to the United States Attorney for filing a forfeiture complaint. *Hammoud* has no relevance to a determination of Article III standing by a federal district court, which is at issue in this case. Finally, despite Bucio's characterization of March 31, 2011 Order, the Court's finding that Bucio did not have standing was not solely based on the FDLE's denial of

4

Bucio's claim.  As explained by the Court, "Bucio's assertion of ownership [was] without any supporting evidence."  (3/31/11 Order 5 (citing supporting case law).)  The Court therefore denies Bucio's Motion for Reconsideration.

## III.    Conclusion

For the reasons outlined here, the Court denies Bucio's Motion for Reconsideration of Opinion and Order Granting Government's Motion to Strike Claim for Lack of Standing (Doc. 35).  A Judgment of Forfeiture will be entered forthwith.

**SO ORDERED this 24th day of January, 2012.**

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**